IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 5:95-CR-70074 |
| v. | ) | |
| | ) | |
| GREGORY A. MILTON, | ) | |
| | ) | By: Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |
| | ) | |

## MEMORANDUM OPINION

On June 13, 1996, a jury found defendant Gregory A. Milton guilty of three crimes: conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 841 (Count One), Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Three), and use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count Four). On October 31, 1996, the court sentenced Milton to life imprisonment on Counts One and Three and a consecutive term of life imprisonment on Count Four. These convictions arose out of the drug related robbery and murder of Ian Byron-Cox on March 13, 1995. Third Superseding Indictment, ECF No. 94-1.

Milton was unsuccessful in challenging his conviction on appeal and in his first petition under 28 U.S.C. § 2255, but was granted authorization to file a second or successive § 2255 petition by the Fourth Circuit Court of Appeals on July 14, 2016 following the Supreme Court's decisions in Johnson v. United States, 576 U.S. 591 (2015), and Welch v. United States, 136 S.Ct. 1257 (2016). Milton's subsequent § 2255 petition was stayed for a period of time as the case law following Johnson applicable to convictions under § 924(c) developed.

1

Milton challenges his life sentences, arguing that the evolution of the law invalidates his conviction and the consecutive life sentence imposed for the § 924(c) violation in Count Four and the mandatory sentence of life imprisonment for violation of the Hobbs Act in Count Three. As to Count Four, Milton argues that he cannot be guilty of use of a firearm in furtherance of a crime of violence because the Hobbs Act robbery charged in Count Three no longer categorically qualifies as a crime of violence following United States v. Davis, 139 S. Ct. 2319 (2019), United States v. Simms, 914 F.3d 229 (4th Cir. 2019), and United States v. Taylor, 979 F.3d 203 (4th Cir. 2020). As regards Count Three, Milton argues that the enhancement to mandatory life imprisonment no longer applies because Hobbs Act robbery does not categorically qualify as a serious violent felony under 18 U.S.C. § 3559(c)(2)(F). While the government at one point agreed with Milton that Count Four must fall, it now argues that the petition be denied in its entirety, focusing on the fact that Count Four of the Third Superseding Indictment expressly alleges actual robbery in violation of the Hobbs Act as opposed to conspiracy or attempt to violate the Hobbs Act.[1]

As to the § 924(c) conviction on Count Four, on balance, and applying the modified categorical approach, the court is convinced that Milton was convicted of actual Hobbs Act robbery, as opposed to attempt or conspiracy. As explained herein, the principal reason for this conclusion is that the jury was not instructed on attempt or conspiracy to violate the Hobbs Act, and was told that in order to convict on Count Three the government must prove

---

[1] The government filed a Motion to Withdraw the United States' Partial Response to Motion to Vacate, ECF No. 369, in which it stated "[a]fter further review, the United States has determined that its concession was improvidently made and, in fact, the conviction remains valid." As the court fully addresses this issue on the merits and concludes that the law does not support the concession as to Count Four later withdrawn by the government, the government's motion to withdraw its partial response is **GRANTED**.

actual robbery, i.e., "that the defendant took the property from Ian Byron-Cox by force or violence." Jury Instructions, ECF No. 398-5, at 76.  In short, as the jury was only instructed on actual Hobbs Act robbery, the court is required to conclude that Milton was convicted of that offense. As Hobbs Act robbery categorically remains a crime of violence for § 924(c) purposes, the court may not set aside his conviction on Count Four. As "firearms possession (as described in section 924(c))" is an enumerated  offense meeting the definition of a "serious violent felony" for the purposes of the mandatory life imprisonment enhancement in 18 U.S.C. § 3559(c)(1), Milton's life sentence on Count Four remains mandatory.

As to the Hobbs Act robbery conviction on Count Three, however, the court is required to set aside Milton's life sentence. Because the Hobbs Act makes it illegal to affect commerce by robbery of a person or property, it is categorically broader than the definition of a "serious violent felony" in 18 U.S.C. § 3559(c)(2)(F). As such, the mandatory life sentence imposed for Count Three must be vacated. Milton will be resentenced to a 20-year term of imprisonment on Count Three.

Next, Milton challenges the life sentence imposed on Count One under the First Step Act.  Milton is eligible for relief under the First Step Act, and the court will reduce his sentence on Count One to 20 years, to run concurrent with the 20-year sentence on Count Three. The life sentence on Count Four must run consecutive to the sentences on Counts One and Three.

Milton also seeks to bring an actual innocence claim. However, because he cannot meet the threshold requirements of 28 U.S.C. § 2244(b)(2), he is not entitled to bring the claim in this successive § 2255 motion and the claim is dismissed.

# I.

18 U.S.C. § 924(c)(1)(A) provides that a person who uses or carries a firearm "during and in relation to any crime of violence or drug trafficking crime" or possesses a firearm "in furtherance of any such crime" may be convicted both for the underlying predicate crime and utilizing a firearm in connection with such crime of violence or drug trafficking crime.[2]  The statute defines a "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3). The first part of the crime of violence definition is referred to as the force (or elements) clause, and the second part is known as the residual clause.

Following Johnson's legacy, in United States v. Davis, the Supreme Court held that the residual clause in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. 139 S. Ct. at 2336. The Fourth Circuit recently ruled that "Davis announced a new substantive rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court and was previously unavailable." In re Thomas, 988 F. 3d 783, 790 (4th Cir. 2021).

Since Davis was decided, the Fourth Circuit has issued three opinions on the question whether Hobbs Act robbery qualifies as a crime of violence under the force clause of § 924(c)(3)(A). In United States v. Mathis, 932 F.3d 242, 266 (4th Cir. 2019), the court "conclude[d] that Hobbs Act robbery constitutes a crime of violence under the force clause

---

[2] Milton was charged in Count 2 with use and carrying of a firearm in furtherance of the conspiracy to distribute crack cocaine, as to which the jury returned a Not Guilty verdict.

of Section 924(c)." While an actual Hobbs Act robbery qualifies as a crime of violence, the Fourth Circuit has held that conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the force clause in § 924(c)(3)(A), reasoning that a conspiracy, an illegal agreement, "does not invariably require the actual, attempted, or threatened use of physical force." Simms, 914 F.3d at 234.  In similar fashion, the Fourth Circuit recently held "that attempted Hobbs Act robbery is not 'categorically' a 'crime of violence.'" Taylor, 979 F. 3d at 210.

The Hobbs Act, 18 U.S.C. § 1951, makes it unlawful to interfere with commerce by threats or violence.  It provides:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (b) As used in this section—
>
>> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Count Three of the Third Superseding Indictment makes it clear that Milton was charged with actual Hobbs Act robbery. Count Three states that Milton and codefendants Derek Yancy and John Waller:

> [A]s principals and/or aiders and abettors, did unlawfully obstruct, delay and affect, and attempt and conspire to obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, in that the defendants Gregory A. Milton and Derek Yancy did unlawfully take and obtain personal property consisting of monies, clothing, a telephone and other items from the person and in the presence of Ian Byron-Cox, against his will by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person and the person of another.

ECF No. 94-1, at 4. While Count Three plainly charges actual Hobbs Act robbery, it also charges that Milton and others did "attempt and conspire to obstruct, delay and affect commerce . . . by robbery." Id.

Count Four charges that Milton and others "as principals and/or aiders and abettors, during and in relation to a crime of violence for which they may be prosecuted in a Court of the United States, that is robbery under Title 18, United States Code, Section 1951, knowingly used and carried a firearm." Id. at 5. Count Four continues that in the course of his violation, Ian Byron-Cox was murdered. Although the text of Count Four does not reference attempt or conspiracy to commit Hobbs Act robbery, the first paragraph of Count Four notes that "Count Three of this Indictment is fully realleged and incorporated into this Count Four of the Indictment." Id.

### A.

While the Fourth Circuit's opinion in Mathis teaches that actual Hobbs Act robbery is a qualifying crime of violence for § 924(c) purposes, Simms and Taylor hold that attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery are not qualifying crimes

of violence. Because of the salient distinction crafted in recent case law, the court is required to determine what Milton was convicted of in Count Four.

Milton argues that he was convicted of all three Hobbs Act crimes, actual robbery, attempt, and conspiracy, for two reasons.  First, he argues that Count Four includes attempt and conspiracy as Count Three is realleged and incorporated in Count Four. Next, arguing that Hobbs Act robbery is "a statute with alternative elements," <u>Descamps v. United States</u>, 570 U.S. 254, 261-62 (2013), Milton asks the court to employ the "modified categorical approach"[3] and consider that, when instructing the jury on Count Four, the court told the jury that Count Four required proof "that the killing of Cox through the use of the firearm was during and in relation to the robbery alleged in count three."  Trial Tr., Jury Instructions, ECF No. 398-5, at 77-78.

While Count Four of the Third Superseding Indictment does incorporate by reference Count Three, the court is not convinced from examination of all of the documents approved for review by the Supreme Court in <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990), and <u>Shepard</u>, 544 U.S. at 26, that Milton was convicted of attempt and conspiracy in addition to actual Hobbs Act robbery.

---

[3] "In a 'narrow range of cases' courts may use the 'modified categorical approach' because 'a statute with alternative elements' is deemed 'divisible—i.e., comprises multiple, alternative versions of the crime.' When a defendant is convicted of violating a divisible statute, courts can 'look beyond the statutory elements to the charging paper and jury instructions' (<u>Shepard[v. United States</u>, 544 U.S. 13 (2005)]-approved documents) to determine what offense the defendant was convicted of committing." <u>United States v. Al-Muwwakkil</u>, 983 F.3d 748, 753 (4th Cir. 2020) (internal citations omitted). <u>See</u> <u>United States v. Runyon</u>, 983 F. 3d 716, 724 (4th Cir. 2020) ("Under this approach, the court may look to the terms of the relevant charging document, jury instructions, plea agreement, plea colloquy, and the like."). As the Fourth Circuit noted in <u>Runyon</u>, "as allowed by the modified categorical approach, we review the indictment on which Runyon was convicted and the jury instructions leading up to his conviction to determine the actual crime for which Runyon was convicted." <u>Id.</u> at 12.

Critically, nowhere does the court instruct the jury on attempted Hobbs Act robbery or conspiracy to engage in Hobbs Act robbery. Although the court had three opportunities to instruct the jury on attempt or conspiracy in the context of Count Three, it never did so.[4]

First, the court told the jury that it was going to read the charges in the indictment.[5] But in reading Count Three, the court did not read to the jury the "and attempt and conspire to obstruct" language contained in Count Three. It was omitted. As regards the critical portion of Count Three, the court instead stated:

> That on or about March 13, 1995 in the Western Judicial District of Virginia, Gregory A. Milton, Derek Yancy, the defendants, and John Kirk Waller, as principals and/or aiders and abettors, did unlawfully obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, in that the defendants, Gregory A. Milton and Derek Yancy did unlawfully take and obtain personal property consisting of monies, clothing, a telephone and other items from the person and in the presence of Ian Byron-Cox against his will by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person and the person of another.

Trial Tr., Jury Instructions, ECF No. 398-5, at 68-69.

Second, the court also did not mention attempt or conspiracy in outlining the elements of Count Three to the jury. Rather, the court listed the elements as follows:

> Obstructing, delaying or affecting interstate commerce by robbery, as charged in count three, has three essential elements that the Government must prove beyond a reasonable doubt. First, that the defendant, Gregory Milton, took property from Ian

---

[4] To be sure, the jury was instructed on conspiracy, but those instructions concerned the drug trafficking conspiracy charged in Count One. Trial Tr., Jury Instructions, ECF No. 398-5, at 65-67.

[5] The court stated: "Now there are four counts, as you have been told, in the indictment. I'm about to read that indictment to you. I'm also going to permit you to carry a copy of the indictment with you back to the jury room, and I want to remind you and caution you that the indictment is not evidence. It is simply the Government's accusation against the defendant." Trial Tr., Jury Instructions, ECF No. 398-5, at 65.

Byron-Cox. Second, that the defendant took the property from Ian Byron-Cox by force or violence. And third, that the robbery obstructed, delayed or affected interstate commerce.

Id. at 76.

Third, the jury sent a note during its deliberations which the court interpreted as a request "to re-instruct you on the elements as to each of the counts, and I will do that." Id. at 86. Again, while the court instructed on conspiracy, it did so on "the crime of conspiracy as charged in count one of the indictment." Id. at 87-90. The court re-instructed the jury as to the elements of Counts Three and Four, making no mention of attempt or conspiracy, as follows:

Obstructing, delaying or affecting interstate commerce by robbery as charged in count three has three essential elements that the Government must prove beyond a reasonable doubt.

First, that the defendant, Gregory Milton, took property from Ian Byron-Cox. Two, that the defendant took the property from Ian Byron-Cox by force or violence. And three, that the robbery obstructed, delayed or affected interstate commerce.

If the Government fails to prove each of these essential elements beyond a reasonable doubt, you must find the defendant not guilty of count three.

The phrase interstate commerce means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States.

An action which obstructs, delays or affects interstate commerce is any action that interferes with, changes or alters the movement, transportation or flow of goods, money or other property in interstate commerce. Interstate trafficking in narcotics is interstate commerce.

Gregory Milton is charged in count four with knowingly using a firearm during and in relation to the robbery alleged in count three.

> For you to find the defendant guilty of this crime you must be convinced that the Government has proven the following beyond a reasonable doubt.
>
> One, first, that the defendant knowingly used a firearm or aided and abetted the use of a firearm on or about the date alleged.
>
> Second, that the defendant knowingly used the firearm or aided and abetted the use of a firearm to kill Ian Byron-Cox.
>
> Third, that the killing was with malice aforethought and premeditated.
>
> And fourth, that the killing of Cox through the use of the firearm was during and in relation to the robbery alleged in count three.
>
> If the Government fails to prove each of these essential elements beyond a reasonable doubt, then you must find the defendant not guilty of count four.

Trial Tr., ECF No. 398-5, at 93-94.

The absence of a jury instruction on attempt or conspiracy to commit Hobbs Act robbery is consistent with the government's closing argument, which also did not mention Hobbs Act attempt or conspiracy.  Instead, the government's closing argument focused on the contested element of the impact on interstate commerce of the actual robbery and murder in this case. As the government explained during its closing argument,

> Counts three and four arise out of a federal statute known as the Hobbs Act. And the purpose of the Hobbs Act was, essentially, to punish people who by force or by threats or violence commit some action to disrupt interstate commerce.
>
> If you rob someone and it affects interstate commerce, if you use a firearm it violates this federal statute known as the Hobbs Act; in this particular case, the interstate commerce aspect.

*      *      *

> How does it affect interstate commerce? Because when Ian Byron-Cox was robbed, and we'll turn first to the robbery which is count three of the indictment, when he was robbed, when these individuals went in, and using force or violence, the use of the weapon, the use of the threats, the beatings and all the things associated with them - - and that's what the robbery is - - if you find from all those things, and during the course of that they took from him certain things, they took the, they took a cell phone, they took $700 which was clearly the proceeds of a drug trafficking transaction, they took clothing, they took other items from him, you can find that that's affected his ability to carry on the drug trade.

Trial Tr., Government Closing Argument, ECF No. 398-5, at 43-44. In its rebuttal, the government was more succinct on Counts Three and Four, stating simply that "[i]f he's involved in the murder, it involved a robbery, he's guilty of counts three and four." Id. at 54. In short, the government did not argue for a conviction on Count Three based on attempt or conspiracy to violate the Hobbs Act. The government's closing argument focused on the evidence of actual robbery and murder.

Consistent with the jury instructions and argument, the verdict form did not break out Count Three into actual Hobbs Act robbery, attempt, or conspiracy. Rather, it simply asked the jury to find Milton guilty or not guilty "[a]s charged in Count Three of the Indictment." ECF No. 162. And as to Count Three, the jury heard only argument and instruction about an actual robbery.

Thus, the question to be answered was whether Milton was convicted of attempted Hobbs Act robbery or conspiracy to engage in Hobbs Act robbery. While Count Three of the indictment includes attempt and conspiracy language, the jury was not instructed on attempted Hobbs Act robbery or conspiracy to violate the Hobbs Act. Rather, the jury was only instructed as to the elements of actual Hobbs Act robbery. Because the jury was not

instructed on attempt or conspiracy to commit Hobbs Act robbery, Milton could not be convicted of that conduct. United States v. Polowichak, 783 F. 3d 410, 417 (4th Cir. 1986). In Polowichak, the trial court did not instruct the jury on the elements of Counts 6 and 7, charging violations of the Travel Act, 18 U.S.C. § 1952(a)(3), and defendants challenged their convictions on these counts on appeal. The Fourth Circuit unambiguously held that the convictions on Counts 6 and 7 must be reversed, concluding that "we know of no case in which a conviction was upheld in the absence of a jury charge. A charge was absent here, and we perceive no acceptable substitute." 783 F. 3d at 417.[6]

As evident from the jury instructions, the court did not submit the issues of attempt or conspiracy to commit Hobbs Act robbery to the jury.  And while a court may not broaden the charges in an indictment by constructive amendment in its jury instructions,[7] it may narrow them. See Griffin v. United States, 502 U.S. 46, 60 (1991) ("What we have said today does not mean that a district court cannot, in its discretion, give an instruction of the sort petitioner requested here, eliminating from the jury's consideration an alternative basis of liability that does not have adequate evidentiary support."); United States v. Miller, 471 U.S. 130, 144-45 (1985) ("[W]here an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment.")

---

[6] The court reached that conclusion notwithstanding the fact that in Polowichak, as here, the court supplied the jury with a copy of the indictment, with appropriate instructions that it is not evidence. Id. at 413, Trial Tr., Jury Instructions, ECF No. 398-5, at 65.

[7] "A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994).

(internal citations and quotations omitted). As such, the court must conclude that Milton was convicted of Hobbs Act robbery alone.

The Fourth Circuit's decisions in United States v. Vann, 660 F. 3d 771 (4th Cir. 2011), and United States v. Chapman, 666 F.3d 220 (4th Cir. 2012), relied upon heavily by Milton, do not support a contrary conclusion. In Vann, the Fourth Circuit held that it could not determine from the state court charging documents whether Vann had been convicted of a particular provision of the North Carolina Indecent Liberties Statute subjecting him to sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 922(e). As such, the Fourth Circuit vacated the district court's imposition of the enhancement. Chapman cited Vann for the proposition that "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct." 666 F. 3d at 228. Here, in contrast, the jury instructions conclusively establish that Milton was convicted only of Hobbs Act robbery as no argument was made nor instruction given to the jury as to attempt or conspiracy to violate the Hobbs Act. Unlike in Vann and Chapman, the Taylor and Shepard-approved record in this case makes it clear that Milton was convicted only of Hobbs Act robbery, which is a crime of violence under the force clause of § 924(c)(3)(A).

Each of the other cases cited by Milton on this point are likewise distinguishable. In United States v. Berry, No. 3:09cr00019, 2020 WL 91569, *3 (W.D. Va. Feb. 6, 2020), unlike here, the "parties acknowledge[d] that the jury instructions allowed for a conviction on either conspiracy or attempted Hobbs Act robbery, and the jury verdict was a general verdict which does not specify which was the basis of the conviction." (internal quotation omitted). In re

Gomez, 830 F.3d 1225, 1227 (11th Cir. 2016), concerned an application to file a successive §

2255 petition based on the fact that the indictment charged attempted Hobbs Act robbery,

Hobbs Act conspiracy, and drug trafficking crimes as § 924(c) predicate offenses. The court

noted that "[t]he way Gomez's indictment is written, we can only guess which predicate the

jury relied on." Id. at 1228. The court granted the application allowing a second § 2255 petition

to be considered and returned the case to the district court. The order concluded that "[s]hould

an appeal be filed from the district court's determination, nothing in this order shall bind the

merits panel in that appeal." Id. (internal citation omitted). In United States v. Lettiere, No.

CR 09-049-M-DWM, 2018 WL 3429927 (D. Mont. July 16, 2018), the court examined the jury

instructions to determine whether Lettiere had been convicted of Hobbs Act robbery or

extortion, the latter of which would not serve as a § 924(c) predicate. The court noted that the

jury instructions failed to charge all of the elements of Hobbs Act robbery.

> The jury instruction does not show how Lettiere was convicted
> of robbery. It shows he was convicted of robbery or extortion or
> even, arguably, just extortion. There is no reason to doubt that
> Lettiere's *conduct* was robbery. In categorical analysis, "[h]ow a
> given defendant actually perpetrated the crime makes no
> difference." Mathis [v. United States, 136 S. Ct 2243], at 2251.
> The point of the Shepard documents is to determine what *elements*
> were proved against the defendant. From the record, one cannot
> say the jury convicted Lettiere of taking personal property "from
> the person or in the presence of" the victim, "against his will."
> Those elements were not submitted for the jury's deliberation.
> All that can be said is that the jury convicted Lettiere of inducing
> the victim to part with property by wrongfully using the threat of
> force or fear.
>                         *   *   *
> The jury did not find all the elements of Hobbs Act robbery.
> Although Hobbs Act robbery is a crime of violence under §
> 924(c)(3)(A), extortion is not. Section 924(c)(3)(B) is
> unconstitutionally vague. As a result, Lettiere's conviction under
> § 924(c) cannot stand under controlling law.

Id. at *4-5.  In fact, the court's analysis in Lettiere, focusing as it did on the text of the jury instructions given to the jury in that case, supports the conclusion that Milton was convicted only of Hobbs Act robbery, and not attempt or conspiracy.  The same is true as regards Milton's citation of United States v. McCall, No. 3:10cr170, 2019 WL 4675762 (E.D. Va. Sept. 25, 2019). There, unlike here, the court instructed the jury that the charge of violent crime in aid of racketeering ("VICAR") in violation of 18 U.S.C. § 1959(3) could be based on either the underlying predicate state court offenses of assault with a dangerous weapon or conspiracy to commit such assault. Because both the indictment and jury instructions included a conspiracy charge, the court reasoned that "McCall's liability in Count Three could have been based on committing assault with a dangerous weapon by either unlawful or malicious wounding or brandishing or conspiring to commit those offenses. Conspiring to commit the crimes of malicious or unlawful wounding or brandishing does not necessarily require the use, attempted use, or threatened use of physical force that is required as a predicate for a conviction under § 924(c)."  Id. at *7.  In short, because Milton's jury was not instructed on either attempt or conspiracy to commit Hobbs Act robbery, the court finds that his conviction on Count Three necessarily included only actual Hobbs Act robbery. As such, none of these cases cited by Milton support vacating his § 924(c) conviction.

"'[O]nce the court has [under the modified categorical approach] consulted the record and isolated the specific crime underlying the defendant's conviction, it must then apply the categorical approach to determine if it constitutes a [crime of violence],' considering only the elements of the identified crime and the fact of conviction." Runyon, 983 F.3d at 725 (quoting United States v. Allred, 942 F.3d 641, 648 (4th Cir. 2019).  In Mathis, the Fourth Circuit

"conclude[d] that Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)." 924 F.3d at 266. As Milton's Hobbs Act robbery conviction categorically qualifies as a crime of violence under the force clause of § 924(c), his motion to set aside his conviction on Count Four must fail.

**B.**

Next, Milton argues that because he was charged, and the jury was instructed on the offense of aiding and abetting Hobbs Act robbery, his conviction was not for a crime of violence. This argument ignores well-established law that aiding and abetting a crime is not a separate offense; rather it is merely a way of committing the crime charged.

> It is settled that vicarious liability predicated on having aided or abetted the crimes of another need not be charged in an indictment. See United States v. Wills, 346 F.3d 476, 495 (4th Cir. 2003). The reason for this rule is that aiding and abetting simply describes the way in which a defendant's conduct resulted in the violation of a particular law. The federal criminal statute dealing with the subject speaks simply of agency and causation principles, providing that a person is punishable "as a principal" if he "aids, abets, counsels, commands, induces or procures" the commission of a federal offense or "willfully causes" another to do an act that would be criminal if he performed it himself. 18 U.S.C. § 2. Because the aiding and abetting provision does not set forth an essential element of the offense with which the defendant is charged or itself create a separate offense, aiding and abetting liability need not be charged in an indictment. See United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987).

United States v. Ashley, 606 F. 3d 135, 143 (4th Cir. 2010); United States v. Day, 700 F. 3d 713, 720 (4th Cir. 2012); accord United States v. Camara, 908 F. 3d 41, 46 (4th Cir. 2018).

On remand from the United States Supreme Court, the Third Circuit in United States v. Richardson, 948 F.3d 733 (6th Cir. 2020), recently addressed this question directly.

Richardson . . . argues that his conviction for *aiding and abetting*

Hobbs Act robbery, unlike a conviction for the *principal* offense, is not a crime of violence under the elements clause. We disagree. There is no distinction between aiding and abetting the commission of a crime and committing the principal offense. Aiding and abetting is simply an alternative theory of liability indistinct from the substantive crime. United States v. McGee, 529 F.3d 691, 695-96 (6th Cir. 2008). Thus, under 18 U.S.C § 2, an aider and abettor is punishable as a principal. United States v. Davis, 306 F.3d 398, 409 (6th Cir. 2002). ("[O]ne who causes another to commit an unlawful act is as guilty of the substantive offense as the one who actually commits the act." (quoting United States v. Maselli, 534 F.2d 1197, 1200 (6th Cir. 1976)). So to sustain a conviction under § 924(c), it makes no difference whether Richardson was an aider and abettor or a principal.

Moreover, the First, Third, Tenth, and Eleventh Circuits have held that aiding and abetting Hobbs Act robbery is a crime of violence under § 924(c)(3)(A). See United States v. McKelvey, 773 F. App'x 74, 75 (3d Cir. 2019); United States v. Garcia-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018); United States v. Deiter, 890 F.3d 1203, 1215-16 (10th Cir. 2018); In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016). In Colon, for example, the Eleventh Circuit explained:

> Because an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery. And because the substantive offense of Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," ... then an aider and abettor of a Hobbs Act robbery necessarily commits a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

Id. (citation omitted) (quoting § 924(c)(3)(A)).

We agree with our sister circuits and conclude that Richardson's conviction for aiding and abetting Hobbs Act robbery satisfies the elements clause.

17

948 F. 3d at 741-42. <u>Accord</u> <u>United States v. Grissom</u>, 760 F.App'x 448, 454 (7th Cir. 2019) ("But aiding and abetting is an alternative theory of liability for an offense, so one who aided and abetted robbery still committed that crime of violence.")

In recent days, the Fourth Circuit has agreed, concluding in <u>United States v. Ali</u>, No. 15-4433, 2021 WL 1050003, at *9 (4th Cir. March 19, 2021), that "[w]e agree with our sister circuits and conclude that aiding and abetting Hobbs Act robbery is a valid predicate under § 924(c)'s force clause." Accordingly, aiding and abetting Hobbs Act robbery is a crime of violence implicating the force (or elements) clause of § 924(c).

## C.

As explained in the foregoing sections of this opinion, there is no basis to vacate Milton's conviction on Count Four, charging a violation of § 924(c). Nor may the court set aside his consecutive life sentence on this count. Milton's conviction on Count Four for "firearms possession (as described in section 924(c))," plainly meets the definition of a "serious violent felony" under 18 U.S.C. § 3559(c)(1), known as "the federal three-strikes law, which provides for a mandatory sentence of life in prison after a third conviction for a 'serious violent felony.'" <u>United States v. Willie Johnson</u>, 915 F.3d 223, 225, 228 (4th Cir. 2019).

To qualify for the mandatory life enhancement under the three strikes law, Milton must have been convicted on separate prior occasions of "2 or more serious violent felonies" in state or federal court. § 3559(c)(1)(A). As reflected in the Presentence Investigation Report, Milton had two prior convictions in New York for "Robbery: Forcible Theft with Deadly

Weapon," the first in 1982, and the second in 1991.[8]  Each of these offenses is robbery in the first degree under New York law.[9] The New York Penal Law defines robbery in the first degree as follows: "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant the crime: . . . 3. Is armed with a deadly weapon." N.Y PENAL LAW § 160.15. First degree robbery in New York categorically qualifies as a "serious violent felony" under § 3559(c)(2)(F)(i). United States v. Snype, 441 F.3d 119, 144 (2d Cir. 2006) ("Because these state statutory elements parallel those required to establish robbery under 18 U.S.C. §§ 2111, 2113(a), and 2118(a), there can be no question that New York State convictions for first and second degree robbery by definition qualify as serious violent felonies under § 3559(c)(2)(F)(1)."). Indeed, in Willie Johnson, the Fourth Circuit held that even third degree robbery in New York meets the definition of a serious violent felony under § 3559(c)(2)(F)(1) ("All in all, we are left with the conviction that Congress intended robbery under the three-strikes law to encompass New York robbery in the third degree."). See also United States v. Hammond, 912 F. 3d 658 (4th Cir. 2019) ("[W]e conclude that all the New York robbery statutes have as an element the use or threatened use of violent physical force sufficient to satisfy the force clause of Guidelines § 4B2.1(a)(1).")

---

[8] The serious violent felony charge in the instant case, the use of a firearm during and in relation to a crime of violence (the Hobbs Act robbery and murder of Ian Byron-Cox), occurred on March 13, 1995. As such, Milton's second and third serious violent felonies were committed after his conviction of the preceding serious violent felony.  § 3559(c)(1)(B).

[9] Milton was provided written notice of the government's intention to seek an enhanced sentence under § 3559(c)(1) for these New York robbery convictions on October 15, 1995. See Information, ECF No. 43. The NCIC data attached to the government's Information reflects that both his 1982 and 1991 robbery convictions were for violations of New York Penal Law 160.15, first degree robbery. ECF No. 43, at 6, 9. Contrary to Milton's pro se assertion, because he received notice that the government intended to enhance his sentence based on these New York first degree robbery convictions, this case does not present the same concern with substitution of unnoticed prior predicate convictions as was the case in United States v. Hodge, 902 F.3d 420, 430 (4th Cir. 2018).

In sum, Milton's § 924(c) conviction on Count Four qualifies as a serious violent felony under § 3559(c)(2)(F)(i). Because he had been twice convicted in New York of first degree robbery, also qualifying as a serious violent felony under § 3559(c)(2)(F)(1), the three-strikes statute requires that he be sentenced on Count Four to mandatory life.

## II.

Milton also challenges his life sentence on Count Three, arguing that his conviction on Count Three does not qualify as a serious violent felony under the mandatory life enhancement statute, 18 U.S.C. § 3559(c)(2)(F).[10]

Under § 3559(c)(2)(F), a federal crime may meet the definition of a serious violent felony in one of three ways. First, the statute provides that "a Federal or State offense, by whatever designation and wherever committed," falls within a range of enumerated crimes. Two of those enumerated crimes are relevant to this case: "robbery (as described in section 2111, 2113, or 2118),"[11] and "firearms possession (as described in section 924(c))." § 3559(c)(2)(F)(i). Second, a crime qualifies for enhancement by meeting one of two clauses contained in § 3559(c)(2)(F)(ii). Section 3559(c)(2)(F)(ii) provides for enhancement for

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

---

[10] Absent enhancement, the statutory maximum penalty for Hobbs Act robbery is 20 years. 18 U.S.C. § 1951(a). The life sentence imposed on Milton for Count Three stems from the § 3559(c)(2)(F) enhancement.

[11] Section 3559(c)(3)(A) provides an exception to the mandatory life enhancement for a robbery "if the defendant establishes by clear and convincing evidence that — (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury (as defined in section 1365) to any person." Given the trial evidence that Milton murdered Ian Byron-Cox by shooting him with a firearm, this exception has no application to this case.

Thus, § 3559(c)(2)(F)(ii) contains both the familiar force (or elements) and residual clauses.

## A.

The government first argues that Milton's challenge to Count Three is both untimely and procedurally defaulted. As to timeliness, the government argues that because the Supreme Court has not found the residual clause of § 3559(c)(2)(F) to be unconstitutionally vague, his petition is untimely under 28 U.S.C. § 2255(h)(2) (requiring a second or successive § 2255 motion to be founded on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."). The court disagrees, finding that Milton's challenge to the residual clause in § 3559(c) stems from the Supreme Court's decision in Johnson, a new rule of constitutional law made retroactive to cases on collateral review in Welch. In Johnson, the Court found the residual clause of the Armed Career Criminal Act ("ACCA") to be too vague to provide, consistent with due process, a standard by which courts must fix criminal sentences. Subsequently, in Sessions v. Dimaya, 138 S. Ct. 1204, 1213 (2018), the Court applied the reasoning in Johnson to hold the residual clause of the definition of "crime of violence" in 18 U.S.C. § 16(b) to be unconstitutionally vague. In Davis, the Court extended the holdings in Johnson and Dimaya to 18 U.S.C. § 924(c)(3)(B). Plainly, Dimaya and Davis teach that the holding in Johnson as to the unconstitutional vagueness of the residual clause is not ACCA specific. Importantly, the statutory language held unconstitutional in Dimaya and Davis is largely the same as the residual

21

clause in § 3559(c)(2)(F).[12] As the court held in <u>Wainwright v. United States</u>, No. 19-62364-

CIV-COHN,  2020 U.S. Dist. LEXIS 63247 (S.D. Fla. Apr. 6, 2020),

> That there have been three Supreme Court cases consistently
> finding that the residual clauses of various statutes are void for
> vagueness is a strong indication that courts should continue to
> apply the same principles that the Court applied in <u>Johnson</u>: (1)
> that enhancement statutes must be evaluated using a categorical
> approach, and (2) that dual ambiguity renders a provision
> unconstitutionally vague. Applying these principles to the
> residual clause in § 3559(c)(2)(F)(ii), this Court finds the same two
> layers of vagueness that existed in the clauses at issue in all three
> Supreme Court cases: first, courts must determine what
> constitutes a "substantial risk" of force, and second, courts must
> imagine what the "nature" of a particular crime is without resort
> to the actual facts of an underlying offense. It is therefore clear
> that <u>Davis</u> and its predecessors also render § 3559(c)(2)(F)(ii)
> unconstitutional.

<u>Id.</u> at *11-12. Likewise, the court in <u>United States v. Goodridge</u>, 392 F. Supp. 3d 159, 172 (D.

Mass. 2019), rejected a timeliness challenge to the residual clause of § 3559(c)(2)(F), finding

"the decisions applying <u>Johnson's</u> rule beyond the ACCA to other, similarly worded statutes

compelling. Accordingly, the court concludes Defendant's 2255 motion contains, by virtue of

<u>Johnson</u>, 'a new rule of constitutional law, made retroactive to cases on collateral review by

the Supreme Court, that was previously unavailable,' as required by 28 U.S.C. § 2255(h)(2)."

<u>See also</u> <u>Moore v. United States</u>, 871 F. 3d 72, 80 (1st Cir. 2017); <u>United States v. Hammond</u>,

---

[12] Compare 18 U.S.C. § 16(b), struck down in <u>Dimaya</u> ("The term 'crime of violence' means . . . any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"), with 18 U.S.C. § 924(c)(3)(B), struck down in <u>Davis</u> ("the term 'crime of violence' means an offense that is a felony and . . . that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"), and 18 U.S.C. § 3559(c)(2)(F)(ii), at issue here ("the term 'serious violent felony' means . . . any other offense punishable by a maximum term of imprisonment of 10 years or more . . . that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense").

354 F. Supp. 3d 28, 47 (D. D.C. 2018). For these reasons, the court finds Milton's challenge to the residual clause of § 3559(c)(2)(F) to be timely.[13]

Second, the government argues that Milton may not raise the challenge to § 3559(c)(2)(F) here because he did not raise it on direct appeal. As such, Milton procedurally defaulted his vagueness challenge to the residual clause in § 3559(c)(2)(F). A petitioner may not generally pursue a claim on collateral review that he failed to raise on direct appeal unless he demonstrates cause and prejudice or that he is actually innocent. Massaro v. United States, 538 U.S. 500, 504 (2003). A petitioner can establish cause for his procedural default by demonstrating that there was no reasonable basis in existing law for him to bring the claim on direct appeal. Reed v. Ross, 468 U.S. 1, 14-15 (1984).  The court finds that Milton had cause for failing to previously raise this challenge. "That is, 'no one—the government, the judge, or the [defendant]—could reasonably have anticipated Johnson.'" Goodridge, 392 F. Supp. 3d at 172 (quoting Cross v. United States, 892 F.3d 288, 295 (7th Cir. 2018), and United States v. Snyder, 871 F.3d 1122, 1127 (10th Cir. 2017)). But see Gatewood v. United States, 979 F. 3d 397-98 (6th Cir. 2020) ("Gatewood has not shown cause for the procedural default of his vagueness claim. He therefore may not raise it on collateral review."). There can be little disagreement that Milton has suffered prejudice as he was sentenced to mandatory life on Count Three by virtue of the § 3559(c)(2)(F) enhancement. But for the enhancement, the maximum penalty for Hobbs Act robbery is 20 years. 18 U.S.C. § 1951(a). Accordingly, Milton has demonstrated both cause and prejudice sufficient to excuse any procedural default.

---

[13] Given the Supreme Court's subsequent decisions in Dimaya and Davis, the court does not believe that this conclusion is foreclosed by the Fourth Circuit's decision in United States v. Brown, 868 F.3d 297 (4th Cir. 2017) (concluding that the right announced in Johnson did not automatically apply to the residual clause in the career offender guideline, U.S.S.G § 4B1.2(a)).

**B.**

Having cleared the timeliness and procedural default hurdles, Milton argues that Hobbs Act robbery does not qualify for enhancement under the enumerated, force or residual clauses of § 3559(c)(2)(F).[14] The government's response to Milton's petition indicates that it "has taken the position that Hobbs Act robbery does not qualify as a force clause offense under § 3559(c)," United States' Response to Milton's Second Amended Motion to Vacate, ECF No. 370, at 18, as Hobbs Act robbery is categorically broader than the force clause of § 3559(c)(2)(F)(ii). That is because the Hobbs Act includes robberies affecting commerce involving actual or threatened "physical violence to any person or property," while the force clause of § 3559(c)(2)(F)(ii) is limited to those offenses having "as an element the use, attempted use, or threatened use of physical force against the person of another." Although the government does not concede the unconstitutionality of the residual clause, the Court's Johnson, Dimaya, and Davis holdings compel the conclusion that the residual clause of § 3559(c)(2)(F)(ii) is unconstitutionally vague. Thus, Milton's conviction for Hobbs Act robbery resulting in murder only qualifies for enhancement to mandatory life if it falls within the enumerated clause of § 3559(c)(2)(F)(i).

---

[14] In his Motion to Correct Scrivener's Error, ECF 376, adopted by Milton's counsel in the Reply Brief in Support of Second Amended Motion to Vacate, ECF No. 383, at 34-35, Milton moves to correct a reference in the Second Amended Motion to Vacate, ECF No. 364, that Hobbs Act robbery is not punishable by more than ten years, disqualifying it from meeting the definition of a "serious violent felony" under the federal three strike statute, 18 U.S.C. § 3559(c)(2)(F). Milton is correct that the statement is his Second Amended Motion to Vacate is in error, as Hobbs Act robbery is punishable by a maximum term of imprisonment of twenty years. As such, Milton's Motion to Correct Scrivener's Error, is **GRANTED**. As addressed herein, Milton argues that Hobbs Act robbery does not qualify as a "serious violent felony" under the federal three strike statute because it does not fall within the force, residual or enumerated clauses of § 3559(c)(2)(F). Each of Milton's arguments are addressed in this section of the opinion.

Milton argues that the robbery alleged in Count Three is not an enumerated offense because it does not fall within §§ 2111 (robbery within the special maritime and territorial jurisdiction of the United States),[15] 2113 (bank robbery),[16] and 2118 (robbery of controlled substance).[17] The government disagrees, arguing that Hobbs Act robbery falls within the broad parameters of § 3559(c)(2)(F)(i).

As the Fourth Circuit noted in <u>Willie Johnson</u>, 915 F.3d at 229, "Congress could hardly have been clearer in the text of the statute that § 3559(c)'s enumerated clause should be understood broadly." First, the Fourth Circuit noted, "[i]t listed more than a dozen distinct types of criminal offenses." <u>Id.</u> Next, "Congress began the definition with prefatory language of greater rather than lesser inclusion: a 'serious violent felony' includes a 'Federal or State offense, by whatever designation and wherever committed.' This broad language has no counterpart in ACCA, and was no doubt meant to capture a wide variety of state and federal offenses." <u>Id.</u> As the Fourth Circuit analyzed, '[a] straightforward interpretation of this language calls upon courts to look to the essential nature of a crime, not to minor definitional tweaks or wrinkles in individual jurisdictions." <u>Id.</u> The court next observed that "[f]ollowing that broad prefatory language, § 3559(c) references other federal robbery offenses using words 'described in' rather than 'defined in.' This is a meaningful distinction, since 'described in' is

---

[15] Section 2111 provides, in full: "Whoever within the special maritime or territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years."
[16] Section 2113 provides, in relevant part: "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or anything of value belonging to . . . a bank . . . shall be fined under this title or imprisoned not more than twenty years, or both."
[17] Section 2118 provides, in relevant part: "Whoever takes or attempts to take from the person or presence of another by force or violence or by intimidation any material or compound containing any quantity of a controlled substance belonging to . . . a person registered with the [DEA] shall . . . be fined under this title or imprisoned not more than twenty years, or both."

the broader of the two terms." Id. (citing Espinal-Andrades v. Holder, 777 F. 3d 63, 168 (4th Cir. 2015)). The Fourth Circuit stated that "the statutory context of § 3559(c) points decidedly towards inclusivity. That is nowhere truer than for robbery" Id. And after noting the existence of the statutory exception for robberies not involving firearms and those not involving death or serious bodily injury, see § 3559(c)(3)(A), the court concluded that "[i]n light of this language, courts must be especially cautious in carving exceptions to § 3559(c) for the various state robbery offenses. Congress has already provided a fact-based escape hatch; courts are not at liberty to create additional ones." Id. After laying this analytical foundation, the court found that New York robbery in the third degree matches robbery as used in § 3559(c). The court noted that "[t]he essence of both the federal and state robbery offenses is a theft or attempted theft by use of force." Id. at 231. Similarly distilled to its essence, the same can be said of Hobbs Act robbery, which requires the taking of property  "by means of actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1).

Milton disagrees, focusing on two aspects of Hobbs Act robbery that he argues renders it categorically broader than "robbery (as described in section 2111, 2113, or 2118)." § 3559(c)(2)(F)(i). First, he argues that the object of the force or violence is broader under the Hobbs Act than in robbery as enumerated in § 3559(c)(2)(F)(i) because the actual or threatened force employed to effectuate the robbery may be directed at the victim's property as well as his person.[18] In other words, while the Hobbs Act specifies that the force or threats used to

---

[18] The Hobbs Act defines robbery as follows: "The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or to the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1).

effectuate the robbery may be directed to the victim's person or property, it is categorically broader than "robbery (as described in sections 2111, 2113 or 2118)" because those statutes leave the object of the force or violence unspecified.

While the Fourth Circuit has not spoken on the issue, a number of courts have accepted Milton's argument that Hobbs Act robbery is categorically broader than robbery enumerated in § 3559(c)(2)(F)(i). For example, in <u>Wainwright</u>, the court found unconvincing the government's argument "that the inclusion of conduct against property in the definition of Hobbs Act robbery is a 'modest deviation' from the definitions of the enumerated robbery offenses that the Court should simply disregard." 2020 U.S. Dist. LEXIS 63247, at *24. The <u>Wainwright</u> court framed the issue as follows:

> The question requires the determination of what is meant by the phrase, present in all the enumerated robbery offenses, "force and violence or intimidation." If this phrase encompasses actual or threatened force against property, then Movant's argument fails. If not, then the enumerated offenses clause does not encompass Hobbs Act robbery.

<u>Id.</u> at *25. The court answered the question in movant Wainwright's favor, noting first that Supreme Court jurisprudence suggests that "both the ordinary meaning of the term [force] and the common-law meaning of the term denotes conduct against a person, not property." <u>Id.</u> at *26 (citing <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010) (physical force is "force capable of causing physical pain or injury to another person"); and <u>Stokeling v. United States</u>, 139 S. Ct. 544, 551 (2019) (noting that common law robbery requires force sufficient to overcome a victim's resistance). The <u>Wainwright</u> court noted further that generic robbery does not include robbery committed by force against property. 2020 U.S. Dist. LEXIS 63247, at *27-28 (citing <u>United States v. O'Connor</u>, 874 F. 3d 1147,153 (10th Cir. 2017) ("[W]e conclude

that because Hobbs Act robbery includes threats to property, it is broader than . . . generic robbery . . . .); United States v. Camp, 903 F.3d 594, 602 (6th Cir. 2018) ("We agree with the Tenth Circuit that Hobbs Act robbery reaches conduct that falls outside of generic robbery."). The Wainwright court concluded:

> While generic robbery is not the same as common law robbery, and also differs from the robbery offenses enumerated in § 3559(c)(2)(F)(i), these cases are still informative because they indicate that federal robbery statutes in general do not describe crimes in which force is exerted against property. It is therefore reasonable to conclude, based on the body of case law discussing all federal forms of robbery, that Hobbs Act robbery is unusual in its inclusion of conduct against property and because of this, it is not included in the enumerated offenses clause of § 3559(c)(2)(F)(i).

Id. at *28. See also United States v. Eason, 953 F.3d 1184 (11th Cir. 2020) (agreeing with the holdings in Camp and O'Connor that Hobbs Act robbery does not qualify as an enumerated crime of violence under U.S.S.G. § 4B1.2 because it can be committed by a threat to property alone).

In a similar vein, courts in the Ninth Circuit have held California Penal Code § 211 not to qualify as a serious violent felony for purposes of the federal three strikes act, § 3559(c), because it includes mere threats to property, and, as such, "is broader than any of the federal robbery statutes." United States v. Minjarez, 374 F. Supp. 3d 977, 989 (E.D. Cal. 2019). Likewise, in Morrison v. United States, No. 95-cr-0708 DMS, 2019 WL 2472520, *7 (S.D. Cal. June 12, 2019), the court concluded:

> Because § 211 includes "mere threats to property," while the federal robbery statutes require, at a minimum, conduct that "would put an ordinary reasonable person in fear of bodily harm," [United States v. Selfa, 918 F.2d 749, 751 (9th Cir.1990)], § 211 "sweeps more broadly" than the generic federal crime and

thus cannot serve as a statutory predicate. . . . Because § 211
punishes conduct that is outside the reach of §§ 2111, 2113 and
2118, it is not a categorical match under the enumerated offense
clause in the three-strikes law.

The Fourth Circuit has not addressed whether Hobbs Act robbery encompasses
conduct broader than robbery enumerated in § 3559(c)(2)(F)(i) because the Hobbs Act may
be violated by actual or threatened force or violence to a victim's property alone. Nonetheless,
when addressing the enumerated offense of bank robbery under § 2113, the Fourth Circuit
has held that "[t]he test in this circuit for intimidation under § 2113(a) is whether "an ordinary
person in the teller's position reasonably could infer a threat of bodily harm from the
defendant's acts." United States v. Woodrup, 86 F. 3d 359, 363 (4th Cir. 1996) (quoting United
States v. Wagstaff, 865 F.2d 626, 629 (4th Cir. 1989). In Wagstaff, the court explained that, in
the context of federal bank robbery under § 2113, "'fear' must be reasonable fear of bodily
harm based on the acts of the defendant." Inferentially, the Fourth Circuit's focus on bodily
harm suggests that harm to property sufficient to violate the Hobbs Act would fall short of
meeting the bodily harm element necessary to constitute intimidation under the federal bank
robbery statute.

In sum, notwithstanding the admonition from the Fourth Circuit's decision in Willie
Johnson that the enumerated clause of § 3559(c)(2)(F)(i) be read broadly, the court is
constrained to conclude that the Hobbs Act encompasses conduct beyond "robbery (as
descried in section 2111, 2113, or 2118)," § 3559(c)(2)(F)(i), because the Hobbs Act, unlike

the enumerated federal robbery statutes, may be violated by actual or threatened force against property alone.[19]

## III.

Milton argues that his life sentence on Count One must be reduced under the First Step Act. Count One charged Milton with conspiracy to possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 841. No amount of cocaine base was alleged in the indictment, but the Presentence Report "identified that at least one-half kilogram was distributed throughout this conspiracy." ECF No. 195, at 5. At sentencing, the court stated: "The court finds it unnecessary to make any specific findings as to the quantity of cocaine based in involved in this case." Sentencing Tr., ECF 232, at 28.

At the time Milton was sentenced, a violation of 21 § 841(a)(1) carried a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment if the offense involved more than 50 grams of cocaine base, and a penalty range of 5 to 40 years if the offense involved more than 5 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A) and (B) (1996). An offense involving less than 5 grams or less of cocaine base had a penalty range of 0 to 20 years. 21 U.S.C. § 841(b)(1)(C) (2006). In 2010, the Fair Sentencing Act was passed, and Section 2 of the Act reduced penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C.

---

[19] Milton's second argument, that Hobbs Act robbery is categorically overbroad because it encompasses future threats of force, is unpersuasive. Milton argues that because the definition of robbery used in the Hobbs Act specifies that the "threatened force, or violence, or fear of injury" may be "immediate or future," it is categorically broader than "robbery (as described in sections 2111, 2113 or 2118)." However, each of the federal robbery statutes makes it illegal to take items by intimidation, which necessarily includes a future threat of force. See Wainwright, 2020 U.S. Dist. LEXIS, *23 ("[a] threat of force is, in essence, a promise to commit some action in the future, even if only a few minutes in the future. Robbery by 'intimidation' therefore is perpetuated with threat of future force.").

§ 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Currently, in order to trigger the 10-years-to-life sentencing range, the offense must involve more than 280 grams of cocaine base, and to trigger the 5-to-40-year sentencing range, the offense must involve more than 28 grams of cocaine base. Offenses involving less than 28 grams of cocaine base are subject to sentences of 0-to-20 years.

The First Step Act was passed on December 21, 2018. Section 404 of the act permits a court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence for certain offenses in accordance with the Fair Sentencing Act of 2010, if such a reduction was not previously granted. Offenses qualify for the reduction if they were committed before August 3, 2010 and carry the statutory penalties which were modified by section 2 or 3 of the Fair Sentencing Act of 2010. First Step Act of 2018, Pub. L. No. 115-015, 132 Stat. 015 (2018).

The government concedes that that Milton is eligible for First Step Act relief because the Fourth Circuit held in United States v. Wirsing, 943 F.3d 175, 186 (4th Cir. 2019), that a defendant is eligible to seek relief under the First Step Act if "before August 3, 2010, he committed a violation of 21 U.S.C. § 841(a) and (b)(1)(B)(iii), and the statutory penalties for that statute were modified by Section 2 of the Fair Sentencing Act," regardless of the amount of the drug involved in the offense. The government next asserts Milton was convicted of an offense involving 50 grams or more of cocaine base, and if he were sentenced today, he would

be subject to the 5-to-40-year sentence set out in 21 U.S.C. § 841(b)(1)(B) (2018).[20] ECF No. 370 at 31-32.

Milton argues that because the jury did not convict him of distributing 28 grams or more of cocaine base, his appropriate sentencing range would be 0-to-20 years under § 841(b)(1)(C). However, because Milton has already served more than 20 years, he "does not object to the Court merely considering the reduced statutory range as part of the § 3553 analysis and imposing a sentence within the 5-40 year range the Government agrees would apply." ECF No. 383 at 37.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013), the Supreme Court established that the drug weight is an element of the offense and any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. Under those two cases, if Milton were sentenced today, because the indictment did not specify an amount of cocaine base, he would be sentenced under § 841(b)(1)(C). See United States v. Woodson, 962 F.3d 812, 816 (4th Cir. 2020) (noting that under Fair Sentencing Act, crack cocaine offenses involving less than 28 grams (or an unspecified amount) are punished by 0-to-20 years in prison and citing 21 U.S.C. § 841(b)(1)(C) (2018)).

In Apprendi, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory

---

[20] The government's argument is unclear. The only reference to drug weight in the PSR states that "The probation officer identified that at least one-half kilogram of cocaine base was distributed throughout this conspiracy." PSR, ECF No. 275 at 5. If Milton were convicted of 500 grams of cocaine base, he still would be subject to the penalties under § 841(b)(1)(A), which applies to 280 grams or more of cocaine base. The lack of clarity in the government's argument does not affect the court's conclusion that under the First Step Act, Milton is subject to a maximum sentence of 20 years under § 841(b)(1)(C).

maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In Alleyne, the Court applied Apprendi to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. Id. at 116 (overruling Harris v. United States, 536 U.S. 545 (2002)).

Although neither Apprendi nor Alleyne are retroactively applicable on collateral review,[21] many courts, including this one, have held that the decisions must be considered when a court examines a sentence under the First Step Act. See United States v. Opher, 404 F.Supp.3d 853, 868 (D.N.J. 2019) (noting that courts have consistently rejected the notion that Congress legislates without regard to constitutional norms); United States v. Simons, 375 F.Supp.2d 379, 387 (E.D.N.Y. 2019) (citing Alleyne and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); United States v. Dodd, 372 F.Supp.3d 795, 798 (S.D. Iowa 2019) (finding in a First Step Act case that "[b]oth Apprendi and Alleyne are binding on this Court for sentencings held today."); United States v. Davis, 961 F.3d 181, 187 (2d Cir. 2020) ("[I]t is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a "covered offense" within the meaning of Section 404(a)"); United States v.

---

[21] See United States v. Sanders, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that Apprendi does not apply retroactively to cases on collateral review); and United States v. Stewart, 540 F. App'x. 171 (4th Cir. 2013) (per curiam) (noting that Alleyne has not been made retroactively applicable to cases on collateral review).

Stanback, 377 F.Supp.3d 618, 623 (W.D. Va. May 2, 2019) (joining other courts in finding that Apprendi and Alleyne are applicable in the context of the First Step Act); see also United States v. Laguerre, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

Alleyne made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury or pleaded to by the defendant. 570 U.S. at 116. The jury in Milton's case found him guilty of conspiracy to distribute and possess with intent to distribute an unspecified amount of cocaine base. Verdict Form, ECF No. 162; Sent. Tr., ECF No. 232 at 26; Jmt., ECF No. 197. Under Alleyne, this court is not free to ignore that finding and impose a penalty based on 500 grams of cocaine base referenced in the PSR. Thus, the court finds that under the First Step Act Milton faced a statutory maximum sentence of 20 years.

The court finds that it has authority under 18 U.S.C. § 3582(c)(1)(B)[22] to modify Milton's sentence, taking into account the advisory nature of the guidelines, the considerations set forth in 18 U.S.C. § 3553(a), and Milton's post-conviction activities. Under the First Step Act, Milton's statutory sentencing range based on an unspecified amount of cocaine base is 0-to-20 years. 21 U.S.C. § 841(b)(1)(C). Typically, the court would assess the factors set forth in 18 U.S.C. § 3553(a) to determine an appropriate sentence within the statutory framework.

---

[22] "The court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." 18 U.S.C. § 3582(c)(1)(B).

However, because Milton has served more than 20 years, the court reduces his sentence on Count One to 20 years, the statutory maximum.

## IV.

Finally, Milton argues that he is actually innocent of Counts Three and Four. See ECF Nos. 335, 338.[23] However, the fact that the Fourth Circuit Court of Appeals granted Milton authorization to bring a second or successive claim based on Johnson "does not open the door to other time-barred claims against the petitioner's sentence." Hrobowski v. United States, 904 F.3d 566, 569 (7th Cir. 2018). Rather, unless he satisfies the requirements of 28 U.S.C. § 2244(b), his actual innocence claim must be dismissed as second or successive.

## A.

"A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4). Under 28 U.S.C. § 2244(b)(2), a claim presented in a second or successive habeas application that was not presented in a prior application shall be dismissed unless—

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate of the claim could not have been discovered previously through the exercise of due diligence; and

---

[23] Milton filed two documents in which he argues actual innocence, ECF Nos. 335 and 338. The first is his amended § 2255 motion where he argues actual innocence along with his claims based on Johnson. The second is a supplement to his amended § 2255 motion. The supplement, ECF No. 338, contains the same evidence as the amended petition, ECF No. 335, as well as additional evidence. Both documents cite to exhibits by letter, such as Exhibit A, but the exhibit tags are illegible. The court has reviewed all the evidence and will cite to the ECF numbers from ECF No. 338, as well as to transcripts from Milton's trial filed at ECF No. 398.

> (ii) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See also In re Hubbard, 825 F.3d 225, 229 n.1 (4th Cir. 2016) (noting that § 2255 incorporates § 2244); Walker v. United States, 900 F.3d 1012, 1013-14 (8th Cir. 2018) (pointing out that while a court of appeals must certify a request to bring a second or successive motion under § 2255(h), that determination is preliminary, and the claimant must satisfy the district court that the claim in fact relies on a new rule of constitutional law).

Milton filed his first § 2255 motion in this case on January 6, 2000. ECF Nos. 409, 410.[24] The district court denied relief, ECF No. 416, and the Fourth Circuit Court of Appeals dismissed Milton's appeal of the denial. United States v. Milton, No. 01-7813, 32 F. App'x 103 (4th Cir. April 12, 2002). Milton has sought permission from the Fourth Circuit to file a second or successive § 2255 motion several times and each time permission has been denied. See In re Milton, No. 05-188 (4th Cir. April 7, 2005); United States v. Milton, No. 05-6215, 141 F. App'x 106 (4th Cir. July 28, 2005); and United States v. Milton, No. 06-6329, 182 F. App'x 209 (4th Cir. May 24, 2006). Milton also has filed a petition for writ of audita querela, which was denied by the district court and the denial was affirmed by the Court of Appeals. See ECF Nos. 285, 286, 288, 289, 290, 294, 295. In addition, in 2011, Milton challenged the constitutionality of the bar on second or successive motions but failed to obtain relief. See

---

[24] For reasons which are unclear, the district court docket contains no entries relating to Milton's original § 2255 motion or his subsequent attempts to file a second or successive petition between 2000 and 2008. However, there are references to these motions at the Fourth Circuit Court of Appeals and in some cases, on Westlaw. Also, the court obtained the appellate record for Milton's original § 2255 case, which contained documents related to the § 2255 motion, and has docketed copies of relevant documents. In addition, petitioner Milton filed copies of some of the documents in his possession and the court will cite to these copies where applicable.

ECF Nos. 298, 301, 302, 303, 304, 307, 308. In 2014 he filed a motion for relief under § 2255

which was dismissed as second or successive initially, on reconsideration, and on appeal. See

ECF Nos. 311, 312, 313, 314, 315, 316, 321. In 2016 he filed his motion for relief under

Johnson, and the Fourth Circuit granted him permission to file this second or successive

petition.

Milton does not rely on a new rule of constitutional law as the basis of his successive §

2255 motion, but rather on what he describes as new evidence. He claims that he is entitled

to bring a gateway claim of actual innocence under Schlup v. Delo, 513 U.S. 298 (1995), and

Wolfe v. Johnson, 565 F.3d 140 (4th Cir. 2009), to raise his "procedurally defaulted claims of

ineffective assistance of counsel and prosecutorial misconduct." ECF No. 338. The basis of

his argument is that the evidence he submitted shows that his co-defendant John Waller, rather

than Milton, killed Ian Byron-Cox.

As the Fourth Circuit Court of Appeals has explained,

> Section 2244(b)(2)(B) has three essential components. First, the claim must rely on a "factual predicate [that] could not have been discovered previously through the exercise of due diligence." 28 U.S.C.A. § 2244(b)(2)(B)(i). Second, the claim must describe constitutional error. See id. § 2244(b)(2)(B)(ii). Third, the newly discovered facts upon which the claim is based, when viewed in conjunction with "the evidence as a whole," must "be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Id.

In re Williams, 330 F.3d 277, 282 (4th Cir. 2003). "Clear and convincing evidence produces in

the mind of a fact finder a firm belief or conviction, without hesitancy, about the truth of the

allegations." United States v. Francis, 686 F.3d 265, 274 (4th Cir. 2012). Stated another way, it

is evidence that proves the facts at issue to be highly probable. Jimenez v. DaimlerChrysler

Corp., 269 F.3d 439, 450 (4th Cir. 2001) (citations omitted).

None of the evidence submitted by Milton is new and even if it were new, when considered along with the evidence as a whole, it fails to establish by clear and convincing evidence that absent constitutional error, a reasonable factfinder would have found him not guilty of Counts Three and Four. Much of the evidence Milton submitted is excerpts from trial transcripts produced at his trial and that of his co-defendant, Derek Yancy, who was tried separately. See ECF Nos. 338-4; 338-5 at 2-15; 338-6 at 1, 2-30; 338-7; 338-8. Milton's trial was held in June 1996 and Yancy's trial was held in July 1997. Clearly, the evidence in the trial transcripts is not new and was known to Milton before he filed his first § 2255 petition.

It will be assumed for purposes of this motion that, regarding the trial transcripts, the constitutional error alleged is that his attorney provided ineffective assistance of counsel in the presentation of the evidence. Milton's argument based on the trial transcripts concerns the credibility of two government trial witnesses, Carolyn Chapman and Waller, who entered a guilty plea in the case. Chapman, girlfriend of murder victim Ian Byron-Cox, testified as to the drug dealing activities of Byron-Cox along with those of Milton, and his confederates, Waller, Yancy, and Terrence Drakeford. Chapman also testified about the robbery and shooting of Byron-Cox, at which she was present.

Waller testified that he was involved in drug dealing with Byron-Cox, Milton, Yancy, and Drakeford and obtained a gun at Milton's request shortly before the robbery and murder. Trial Tr., Waller Test., ECF No. 398-3, at 24-27. While scouring the apartment for things to steal, Waller saw Milton beating Byron-Cox, who was bound with duct tape. Id. at 35-37. Waller testified that he put a cellular phone, two leather jackets and $700 in cash in a duffel bag and took it outside. Id. 37. While outside, Waller heard four gunshots and saw Milton and

Yancy run out of the house. Id. at 38-39. Chapman testified that she was bound with duct tape during the robbery but managed to see Milton shoot Byron-Cox. Trial Tr., Chapman Test., ECF No. 398-1, at 62-69.

Both Chapman and Waller were extensively cross-examined at trial and their accounts of the robbery and murder were challenged. Trial Tr., Chapman Test., ECF No. 398-1, at 72-104, 113-115; Waller Test., ECF No. 398-3, at 41-78. As the government summarized on rebuttal closing argument, "[n]ow, the defense basically says you can't find him guilty because you cannot trust the testimony of John Waller and Carolyn Chapman." Trial Tr., Rebuttal Closing Arg., ECF No. 398-5, at 54.

Milton argues that Chapman's and Waller's credibility is undermined by inconsistencies in their testimony at the two trials. For example, Milton points out that Chapman identified Milton as the shooter at his trial but testified at Yancy's trial that right after the murder she could not identify anyone. ECF No. 338-7 at 22. However, Chapman testified that she did not immediately identify anyone after the murder because if Byron-Cox had lived, she would not have testified because "he would have handled it himself." Id. When she found out he had died she decided "to tell." Id. at 23. Milton points out what he describes as other inconsistencies in Chapman's and Waller's testimony. However, notwithstanding some inconsistencies, the evidence he submitted shows that Chapman identified Milton as the murderer at least twice between the two trials. See ECF Nos. 338-6 at 5-6, 8; 338-7 at 19. In addition, Chapman testified that she identified Milton as the shooter when she was interviewed at the hospital after the shooting. ECF No. 398-2 at 73-75. Waller also consistently identified Milton as participating in the robbery and murder of Byron-Cox.

Milton also argues that Yancy's acquittal on the murder, robbery, firearms, and drug charges at his separate trial calls into question Chapman's and Waller's testimony. See generally, Supplement, ECF No. 338, at 2. ("Chapman's materially inconsistent testimony is heightened by the fact that it was the government that brought out this contradictory testimony on direct examination of her at Yancey's trial.").[25] He argues that a reasonable juror would find the testimony of both Chapman and Waller as insufficient to support a finding of guilt beyond a reasonable doubt given the verdict of acquittal reached in Yancy's trial. Supplement, ECF No. 338, at 2 n.1.[26] However, this is a conclusory statement and Milton does not describe how the fact that Chapman and Waller gave incriminating testimony against Milton at his trial is undermined by Yancy's acquittal. Thus, nothing in the excerpts from the trial transcripts, when viewed in light of the evidence as a whole, establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Additionally, Milton offers the affidavits of Eldridge Chandler and Vernon Bagby to discredit Waller's credibility, but both affidavits are dated June 15, 1995 and obviously not new. Supplement, ECF No. 338-2 and 338-3. Both Chandler and Bagby stated that they provided their statements to Milton's attorney at the time, so it is again assumed that he is

---

[25] The docket sheets in the two Yancy cases spell his name slightly differently. As a codefendant of Milton's in the murder, Hobbs Act robbery, firearms and drugs charges, he was prosecuted as Derek Yancy. In the subsequent obstruction of justice trial, the docket sheet lists him as Derek Yancey.

[26] Yancy was later found guilty by a jury of endeavoring to obstruct justice arising out of his murder and robbery prosecution. See United States v. Yancey, 155 F. 3d 564 (4th Cir. 1998).

alleging constitutional error based on ineffective assistance of counsel for failing to call them to testify.[27]

Chandler stated that he had known Milton for more than ten years and that while he was in custody, another inmate, identified as J. Money, overheard Chandler talking about the murder of Byron-Cox and spontaneously confessed to having shot Byron-Cox. Bagby stated that he met Milton while in jail and Milton told him that he had been wrongly accused of shooting someone. Bagby recalled that a few weeks earlier, another inmate had been bragging that he had shot a man in Virginia, and that both Milton and the unidentified man said they were driving a red Ford Taurus on the night of the murder.

Both statements are hearsay evidence purporting to place blame for Byron-Cox's murder on another person, ostensibly John Waller. The court is mindful that it must consider all the evidence without consideration of whether the evidence would be admissible at trial. United States v. MacDonald, 641 F.3d 596, 612 (4th Cir. 2011). However, it also is true that "the petitioner is not to be accorded the benefit of every doubt." Id. "Because a [gateway innocence] claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." House v. Bell, 547 U.S. 518, 539 (2006). "If the district court finds that, 'more likely than not any reasonable juror would have reasonable doubt,' as to the petitioner's guilt, then the petitioner has satisfied the [gateway innocence] standard, and the

---

[27] When Milton filed his first § 2255 petition, he attempted to amend the petition and add a claim that his attorney was ineffective for a failing to call Chandler and Bagby as witnesses and attached the same affidavits to his motion. The district court denied the motion to amend as untimely. ECF Nos. 423, 424, 418, 419, 420, 421 at 31-33, 422.

district court must review the petitioner's procedurally defaulted claims." Teleguz v. Pearson, 689 F.3d 322, 328 (4th Cir. 2012) (quoting House, 547 U.S at 538).

"Examples of evidence that could establish factual innocence include credible declarations of guilt by another, Sawyer v. Whitley, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, Schlup, 513 U.S. at 324, and exculpatory scientific evidence. Pitts v. Norris, 85 F.3d 348, 351 (8th Cir. 1996)." Lewis v. Clarke, No. 2:13-cv-549, 2014 2090563, *6 (E.D. Va. May 19, 2014). See also Finch v. McKoy, 914 F.3d 292, 299 (4th Cir. 2019) (finding petitioner satisfied gateway standard when he submitted expert evidence regarding procedurally faulty line-up identification and expert evidence that undercut prosecution's physical evidence and undermined testimony of eye witness); Carriger v. Stewart, 132 F.3d 463, 478 (9th Cir. 1997) (finding petitioner satisfied Schlup gateway standard when he offered evidence in the form of a sworn confession from another man that he had committed the underlying crime and accurately described details that only a participant would have known, explained the existence of inconsistent evidence, boasted to friends and family that he had set petitioner up, and described how he had disposed of evidence); Garcia v. Portuondo, 334 F.Supp.2d 446, 454 (S.D.N.Y. 2004) (finding petitioner satisfied gateway claim when he submitted alibi evidence consisting of records showing he was in jail in another country hours before the murder and affidavits from five witnesses attesting to his presence in the other country on the night of the murder).

The affidavits from Chandler and Bagby do not raise the possibility that, in light of the evidence as a whole, a jury would have reasonable doubt as to Milton's guilt. The affidavits do not impeach any of the prosecution's witnesses, do not offer scientific or expert evidence or

testimony, and do not offer a first-person confession from Waller that he committed the murder. Were a jury to consider the evidence, it would have to weigh testimony from Chapman, who was present at the murder and identified Milton as the shooter, and Waller, who testified to seeing Milton beat Byron-Cox, against reports, one by a close friend of Milton's, of spontaneous confessions of murder by an unnamed inmate to strangers at a county jail. The evidence is insufficient to establish in the mind of a fact finder a firm belief or conviction, without hesitancy, that Waller rather than Milton shot Byron-Cox.

 Milton's materials also include an affidavit from George Rivera, dated April 2, 2008, stating that while in prison in Texas, Waller admitted to Rivera that "he shot a guy that had disrespected him in front of his girlfriend and tried to beat him out of some money." Supplement, ECF No. 338-3, at 4. In 2007, Rivera was transferred to U.S.P Allenwood where he met Milton who asked him if he knew "Jay". Rivera told Milton that he knew Jay and that "Jay had testified on him blaming him for committing the murder Jay told me that he actually committed." Id. Rivera's affidavit is not new, and like the affidavits from Chandler and Bagby, when viewed in conjunction with the evidence as a whole, it is insufficient to show by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found Milton guilty of the underlying offense.

Milton's materials also include a September 8, 2009 affidavit from his mother, Helene Defares, addressing a telephone conversation with Waller' ex-girlfriend, Evelyn Serrano, who said that "she had moved on with her life and wanted to clear her 'conscience.'" Supplement, ECF No. 338-10, at 2. Ms. Defares said she spoke to Ms. Serrano via telephone in 2008 and Ms. Serrano said she would "come forward to tell what she knew if it would help Greg

43

concerning the homicide in Virginia." Id. In addition to being double hearsay and more than a decade old, the statement from Ms. Defares would not create reasonable doubt for a jury because it does not implicate Waller and at most, says Ms. Serrano was willing to come forward with new information about the murder, although she apparently never did so.

The Supplement also contains an affidavit from Milton's brother, Okyere Milton, stating that on or about March 11, 1995, Milton visited him in Albany, New York. Supplement, ECF No. 338-6, at 2.  Although the Okyere Milton affidavit is undated, the notary attestation indicates that the notary public's commission expired on June 10, 2006. In addition to dating back more than a decade, the affidavit offers no information about the murder.

Milton also presented an unsigned, unsworn affidavit from himself, dated 2008.[28] Milton Affidavit, ECF No. 338-10, at 11-14. In the affidavit, written thirteen years after the murder, Milton stated that he had gone to Waynesboro to pick Waller up and that Waller told him he needed to make a couple of stops. Milton claims that Waller had him first stop at an apartment when Waller went inside for about fifteen minutes, and then had Milton drive him to the house where Byron-Cox was killed and park down the block. Milton stated that he waited in the car but that after about twenty minutes, he walked toward the house and as he approached the back porch of the house, he heard four shots and ran back to the car. Milton reached the car and waited for Waller who soon walked up and got in the car. When Milton asked him about the gunshots, Waller "nonchalantly stated that he had killed Cox." Id. at 13. Milton further stated that on March 15, 1995 he spoke to Serrano, Waller's girlfriend at the

---

[28] The unsworn affidavit is subject to being struck. Pegues v. Hooks, No. 1:19CV61, 2020 WL 85103, n.13 (M.D.N.C. Jan. 7, 2020). Nevertheless, it is presumed for purposes of his actual innocence claim that Milton would provide a sworn affidavit attesting to the same information if he were given an opportunity to do so.

time, and she said that Waller was not there and added, "Gee, why did he do that?" Id. at 14. Finally, Milton stated that in 2006 he spoke to Serrano via telephone and she said she recalled paging Milton and was willing to assist Milton, but wanted to speak to Waller first to assure herself that she would not get into any trouble. Id.

The information in the affidavit is not new but was known to Milton before his trial. Additionally, "eleventh hour" self-serving affidavits containing no indicia of reliability are "inherently suspect." Pegues v. Hooks, No. 1:19CV610, 2020 WL 85103, at *15 (M.D.N.C. Jan. 7, 2020) (citing McDowell v. Lemke, 737 F.3d 476, 483-84 (7th Cir. 2013)); see also Perry v. Virginia, No. 3:13CV327-HEH, 2013 WL 4590619, at *4 (E.D. Va. Aug. 28, 2013) (finding defendant's post-trial affidavit pointing to another person as having committed a murder untrustworthy and therefore not reliable new evidence of his innocence under Schlup standard).

In addition, even if the evidence were reliable, it does not establish that except for constitutional error, no reasonable factfinder would have found Milton guilty of Counts Three and Four. Milton's after-the-fact description of events was contradicted by the testimony of Chapman and Waller, both of whom testified that Milton shot Byron-Cox, as well as by other evidence presented at trial.

Waller testified to the following: Byron-Cox told Milton that if he lost any more drugs Byron-Cox was going to kill him. Trial Tr., John Waller Test., ECF 398-3 at 18. Milton complained to Byron-Cox that he was not getting paid and Byron-Cox cut Milton off from the drug trade. Id. at 18-20. Milton believed Byron-Cox owed him $2,000 and commented that "He'll get killed too" or that "He could get killed too." Id. at 20-21. The Saturday before the

murder, Milton asked Waller to obtain a gun and bullets and Waller got both and gave them to Milton when he saw him. Id. at 24-26. Milton asked where Bryon-Cox was because he wanted to rob him. Id. at 31-32. Milton directed Waller and Yancy to get duct tape and they did so. Id. at 32-33. Waller waited in the car while Yancy and Milton went in the house, but after about fifteen minutes, Milton came out and asked Waller to go inside and look for the money. At that time, Byron-Cox was tied up and crying as Milton beat him. Id. at 35-37. Waller searched for money and Milton then directed him to go outside and turn Byron-Cox's car around so they could put Byron-Cox in the trunk and Waller went outside to do so. Waller removed a large speaker from the trunk and as he was turning the car around, he heard four shots. Id. at 37-38. Milton and Yancy ran out of the house and they, along with Waller, got in the car they had driven to the house and left. Id. at 38-38. Chapman, who was present in the room when Byron-Cox was shot, identified Milton as the shooter when she was interviewed at the hospital after the shooting and at two trials. ECF Nos. 338-6, at 5-6, 8; 338-7, at 19; 398-2, at 73-75.

In addition, Mary Galligan, an FBI agent, testified that when Milton was arrested, law enforcement officers seized a .380 semi-automatic pistol and black bag with ammunition from him. Trial Tr., Galligan Test, ECF No. 398-1, at 247-48. Galligan further testified that at the time Milton was arrested,  he told her that "he knew the police was at the front door, and he knew he was looking at the electric chair in Virginia for the homicide, so he was going to take the gun and come out and shoot us, and this way he would take some of us with him." ECF No. 398-1 at 252-253.

Also, the jury heard evidence implicating Waller in the shooting, but nevertheless found that the prosecution sustained its burden of proving Milton guilty of the offenses. For example, Galligan testified that Milton said he was in the house and that Waller shot Byron-Cox. ECF No. 398-1 Id. at 252. Galligan further testified that she received information on April 19, 1995 that Waller was at Valhalla correctional facility in Westchester County, New York and was bragging that he was the killer. She received that information from Milton's New York counsel, who had received it from Milton. Counsel did not have the name of the inmate who heard Waller bragging and the FBI agent was unable to identify the inmate who had reported the information. ECF 398-1, at 253-254.

In addition, Hunter Carr, a drug customer, testified that Milton said that Waller "just lost it" at the time Byron-Cox was shot. Trial Tr., Hunter Carr Test., ECF No. 398-1, at 258. Another man, Lewis Brooks, testified that Waller asked him to obtain a gun and bullets for him a month before the murder and showed him a .357 revolver. Trial Tr., Lewis Brooks Test., ECF No. 398-1, at 215-218. A friend of Waller's, Joyce Moore, identified Waller as having a gun on the Saturday night before the murder. Trial Tr., Joyce Moore Test., ECF No. 398-1, at 233-234. Moore further testified that on the day of the murder, Waller borrowed her car around 2:00 a.m. or 3:00 a.m., returned it around 6:00 a.m., and later asked her to throw away a bag with a leather jacket in it. Id. at 233-241. Ms. Moore also testified that Chapman and Waller had a close relationship and did things together. Id. at 243-244.

Thus, the jury heard testimony implicating Milton and Waller in the shooting, and convicted Milton based on the testimony. Given the evidence against Milton, as well as the evidence implicating Waller as the shooter that did not sway the jury as to Milton's innocence,

the after-the-fact self-serving affidavit provided by Milton is insufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found Milton guilty of the underlying offense.

Milton submitted one document that was generated after the Fourth Circuit granted him leave to file a successive § 2255 motion, which is an October 20, 2016 affidavit from Terrence Drakeford. Drakeford testified at trial for the government about drug dealing activities involving Byron-Cox, Milton, Waller, and himself in Waynesboro in 1995.  Trial Tr., Drakeford Test., ECF No. 398-1, at 144-151. Drakeford testified about a dispute between Byron-Cox, Milton, and Waller over misplaced narcotics three weeks before the robbery and murder. Drakeford testified that Bryon-Cox told Waller that "[i]f you lose any more, mess up any more I'll leave you down here for dead." Id. at 152. On direct examination, Drakeford was asked about a conversation he had with Byron-Cox at the Valhalla Correctional Institute in New York after Byron-Cox's murder. Drakeford testified that when he asked Milton "why was Mr. Cox in the ground," Milton said that "Waller bugged out." Id. at 156. This is the same information reflected in paragraph 5 of Drakeford's 2016 affidavit. Drakeford Aff., ECF No. 338-1.

New information is contained in paragraphs 7 and 8 of Drakeford's affidavit, where he states that prior to Milton's trial, Waller told him in the Rockingham County Jail that "he actually killed Ian after Ian had disrespected and threatened him again in front of his then pregnant girlfriend, Evelyn (LNU)." In paragraph 8 of his 2016 affidavit, Drakeford states "that I told my lawyer what Waller had told me prior to testifying at Milton's trial but my

lawyer told me saying that would not help my case and would destroy my chances of receiving a favorable sentence under my plea deal." Id.

While Drakeford's affidavit was produced after the Fourth Circuit Court of Appeals granted him permission to file a second or successive § 2255 petition, the information contained in it is not new. Drakeford claims he told his lawyer about the conversation with Waller before Milton's trial. Thus, the information was known to Drakeford and could have been obtained by Milton prior to his trial, or any time prior to the filing of his first § 2255 petition.

Nor is Drakeford's statement reliable evidence, as it is not a confession of guilt by another, a trustworthy eyewitness account, exculpatory scientific evidence, or anything approaching a similar level of reliability. See also Jackson v. United States, 282 F.Supp.3d 533, 536 (N.D.N.Y. 2017) (noting courts take a critical view of recantations by co-conspirators, and even more so when recantations contradict sworn testimony that was subject to cross-examination) (internal citations omitted); United States v. Goodson-Hudson, 583 F. App'x 151, 153 (4th Cir. 2014) (finding self-serving statements insufficient to overcome strong presumption of verity accorded to sworn testimony at hearing). Additionally, if a jury were to hear Drakeford's testimony, looking at the evidence as a whole and for the same reasons discussed above, it would be insufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found Milton guilty on Counts Three or Four.

As a final point, the court notes that Milton seeks to challenge his conviction on Counts Three and Four of the indictment, which alleged that Milton, either as a principal, or as an

aider and abettor, committed Hobbs Act robbery (Count Three) and as a principal, or aider and abettor, knowingly used and carried a firearm and in the course of the violation, killed Byron-Cox with the firearm, such killing being murder in the first degree as defined in Title 18 U.S.C. § 1111 (Count Four). The court has previously reduced the sentence on Count Three and found that Milton was not entitled to relief on Count Four.

None of the evidence Milton submitted, save for his own 2008 affidavit, addresses his role as aider or abettor in Count Four.[29] While the affidavits claim that Waller said he shot Byron-Cox, none of them discuss Milton's role in the events of that day, such as the part he played in obtaining the gun or planning or executing the robbery. Milton alone claims in his affidavit that he believed he simply was giving Waller a ride and was blindsided when Waller ran out of the house and said he had shot Byron-Cox. As discussed above, Milton's affidavit is not new and is otherwise insufficient to establish an actual innocence claim.

For all of the reasons discussed, Milton has not made a showing that the factual predicate of his actual innocence claim could not have been discovered previously through the exercise of due diligence and also has not shown that the facts underlying his actual innocence claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have him guilty on Counts Three or Four. Accordingly, he cannot overcome the second or successive threshold and his claim based on actual innocence is **DISMISSED**.

---

[29] See discussion of the law on aiding and abetting in Section I.B., above.

**B.**

Milton, proceeding pro se despite being represented by counsel, has filed three requests for subpoenas of recordings of two telephone conversations between himself and Evelyn Serrano, who was Waller's girlfriend at the time of the murders. ECF Nos. 347, 379, 406. Milton claims that the recordings are essential to his actual innocence claim because they will show that he spoke to Serrano and that she was hesitant to come forward with information she had about Waller's involvement in Byron-Cox's murder. The court will assume for purposes of this motion that he had at least two conversations with Serrano in which she agreed to discuss Waller's role in the robbery and murder and also that she told Milton's mother that she wanted to "clear her conscience." Nevertheless, Serrano has never come forward or provided an affidavit indicating she had any information related to the robbery and murder and the fact that she told Milton she would do so in 2006 has no effect on his actual innocence claim. Accordingly, the court **DENIES** Milton's requests for a subpoena.

**V.**

As regards Milton's Motion to Vacate, ECF No. 327, as amended by ECF Nos. 335, 364, and 383, the court **GRANTS** Milton's request to reduce the life sentences imposed on Counts One and Three, imposing instead twenty-year sentences on each of those counts. The court **DENIES** Milton's request to reduce the life sentence imposed on Count Four, which remains mandatorily imposed pursuant to § 3559(c). The sentence on Count Four must be served consecutively to the sentences imposed on Counts One and Three.  In all other respects, the judgment of November 4, 1996 remains intact. In addition, the court **DENIES** relief on Milton's actual innocence claim.

A certificate of appealability is **DENIED** because Milton has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(a). See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (requiring a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" (quoting Barefoot v. Estelle, 463 U.S. 880, 893 and n.4 (1983)).

An appropriate Order will be entered.

Entered: This ___20th___ day of April, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.04.20 11:35:07 -04'00'

_____
Michael F. Urbanski
Chief United States District Judge